The Northern Trust Company, Kathryn P. Le Roy and Morris Glasser, as Executors of and Trustees Under Will of Sidney M. Spiegel, Jr., Deceased, Appellants, v. Essaness Theatres Corporation, and Edwin Silverman, Appellees.

Gen. No. 45,680.

Opinion filed October 17, 1952. Rehearing denied November 18, 1952. Released for publication November 18, 1952.

BELL, BOYD, MARSHALL & LLOYD, of Chicago, for appellants; CHARLES E. HERZOG, of Chicago, of counsel.

EDWARD BLACKMAN, and MICHAEL CONANT, of Chicago, for appellees; ODE L. RANKIN, of Chicago, of counsel.

MR. JUSTICE TUOHY delivered the opinion of the court.

Plaintiffs, executors and trustees under the will of Sidney M. Spiegel, Jr., filed their bill below charging

constructive fraud in the purchase by defendant corporation from plaintiffs of 290 plus shares of stock in defendant corporation and seeking to recover the difference between the fair cash value of the stocks so sold and the purchase price. Defendants filed a motion to strike the complaint on the grounds that the action was barred by a prior proceeding of the probate court of Cook county approving the sale and that the complaint did not state a cause of action in law or equity against the defendants or either of them. The trial court struck certain of the allegations, being those which invoked the equitable jurisdiction of the court. From this order plaintiffs appeal.

The complaint, summarized, alleges that defendant corporation made an offer of $1,860.25 per share for the 290 shares of stock which had been owned by Spiegel in his lifetime; that the offer was accepted on November 1, 1945 and the acceptance was thereafter approved by order of the probate court of Cook county on November 15, 1945; that the sale was induced by false and fraudulent representations and by a breach of contractual obligations and fiduciary duties owed by defendants to plaintiffs which induced plaintiffs to sell their shares at considerably less than their fair value; that while defendants were negotiating with plaintiffs for the purchase they were, unbeknown to plaintiffs, carrying on active negotiations, which were completed prior to the time of the sale, for defendant Silverman's acquisition of an interest in the Oriental Theatre and for its management; that under the agreements Silverman acquired on December 8, 1945, for a nominal consideration, a 25% interest in the Oriental Theatre and defendant corporation assumed the management of the Oriental Theatre on or about January, 1946; that the interest so acquired equitably belonged to defendant corporation, had a substantial value estimated at from $100,000 to $250,-

000 and added from 15% to 25% to the net worth of the defendant corporation and to the book value of its stock; that defendants deliberately withheld and concealed from plaintiffs, in order to mislead them as to the value of their stock, all negotiations and agreements as to the acquisition by defendants or either of them of the interest in the Oriental Theatre; that by withholding the information from the defendant corporation's auditors defendants led plaintiffs to believe that the financial affairs of the corporation were adequately reflected on its books at the time of the sale, when such was not the fact; that on April 9, 1945, defendant corporation, acting through defendant Silverman and without the knowledge or consent of plaintiffs, entered into a contract with one Emil Stern under the terms of which it agreed to buy Stern's 250 shares of its stock for $2,232 per share, contingent upon the corporation's entering into an agreement to purchase the shares owned by the Spiegel estate within a stated time; that the approval of the probate court to the estate was procured as a result of the testimony of an auditor-director of defendant corporation, who did not have knowledge of the Oriental Theatre transaction; that prior to the acquisition of the stock in question the outstanding stock of Essaness consisted of 915 and a fraction shares and were owned as follows: Edwin Silverman 375 shares, Emil Stern 250 shares, Spiegel estate 290.2843 shares; that a purchase of plaintiffs' 290 shares of stock was negotiated by Silverman on behalf of Essaness and was authorized and consummated by Silverman and Stern as officers and directors of the corporation; that Silverman and Stern were at the time in control of the corporation, constituted a majority of its board of directors and owned a majority of its stock; that they therefore occupied a fiduciary position not only to the corporation but also to plaintiffs as minority stock-

138

holders; that Silverman, particularly, as president, director and largest stockholder of Essaness, owed a fiduciary duty to plaintiffs; that he dominated its business and affairs; that he and Stern owned approximately 68% of the company stock, and giving effect to the company's agreement to buy Stern's shares, Silverman alone owned over 56% of the company stock; that he had the duty to deal fairly with plaintiffs and make an honest disclosure to them of all facts having a material bearing on the value of their shares; that under the terms of an agreement of July 1, 1940 the individual parties thereto, consisting of Stern, Silverman and Spiegel, agreed to hold their interests in Essaness as partners and not to dispose of such interests except upon terms there provided, and that none would acquire any interest in any theatre without the consent of Essaness and all its stockholders; that by virtue of said agreement it became the duty of defendants to disclose to all stockholders of Essaness, including plaintiffs, the pending plans and negotiations relating to the Oriental Theatre and also to disclose all relevant facts before buying any of their shares of stock; that no such disclosures were made.

The defendants here urge (1) that the appeal is premature for the reason that the order of May 8, 1951, striking a portion of the complaint, is not a final and appealable order; (2) that the complaint stated no cause of action in equity because there is no fiduciary duty of a corporate officer or director to an individual stockholder from whom he purchased the shares in the corporation; (3) that the executors of the Spiegel estate had no confidence or trust in Silverman and made their own investigations as to the value of the Essaness stock owned by them; (4) that the probate court approval of the sale price as fair and reasonable is a bar to the present action.

139

██ In determining whether or not the action of the trial court in striking from the complaint those allegations charging constructive fraud and a breach of obligation owed by a fiduciary was a final and appealable order, the test to be applied is whether or not such action constituted a final determination of the rights of the parties with reference to a definite and separate portion of the subject matter. If it did, it is a final order and therefore appealable. *Hoier v. Kaplan,* 313 Ill. 448.

██ In the instant case two causes of action were set forth in a single complaint, one for constructive fraud arising out of an alleged breach of a fiduciary relationship, and the other actual fraud remedial by an action at law. The effect of the order of the trial court was to deny plaintiffs relief in equity from the constructive fraud, leaving them only their remedy at law. We are of the opinion that substantive rights were involved in plaintiffs' equitable allegations, that they stated an equitable cause of action and that plaintiffs were entitled to try their case in equity upon such equitable issues. In our opinion the case comes within the rule of *Mills v. Ehler,* 407 Ill. 602, where it was said (p. 609) : "It may safely be concluded that where two separate causes of action are joined in a single complaint, even if both ask the same relief, an order dismissing one count of the complaint disposes of one separate branch of the case, and is a final and appealable order even though the matters of substantial controversy raised in the other count, or counts, remain undisposed of." While it is true in the instant case the complaint was not divided into separate counts but was treated as a single equitable cause of action, that fact is not sufficient to take this case out of the rule of the above case, for, as was further said in *Mills v. Ehler* (p. 610), "it is not the form of the decree but the substance and effect of the adjudication

140

which is determinative of whether a particular decree is final." To the same effect are *Roddy v. Armitage-Hamlin Corporation,* 401 Ill. 605; *Hoier v. Kaplan,* 313 Ill. 448; *Altschuler v. Altschuler,* 399 Ill. 559; *Landau v. Landau,* 409 Ill. 556.

██ Defendants argue further that the complaint stated no cause of action in equity because a corporate officer or director owes no fiduciary duty to a stockholder in the purchase of shares of stock in the corporation. The question of the obligation of an officer of a company to disclose all information that he may have as to the value of the corporate stock before purchasing a stockholder's stock either for himself or for the corporation has been the subject of some conflict of authority. However, a good statement of the rule appears in the case of *Strong v. Repide,* 213 U. S. 419, as follows (p. 431):

"If it were conceded, for the purpose of the argument, that the ordinary relations between directors and shareholders in a business corporation are not of such a fiduciary nature as to make it the duty of a director to disclose to a shareholder the general knowledge which he may possess regarding the value of the shares of the company before he purchases any from a shareholder, yet there are cases where, by reason of the special facts, such duty exists. * * * It is here sought to make defendant responsible for his actions, not alone and simply in his character as a director, but because, in consideration of all the existing circumstances above detailed, it became the duty of the defendant, acting in good faith, to state the facts before making the purchase."

Examining the facts averred in the complaint in the instant case in the light of this rule we find that defendant Silverman was a director of defendant corporation, a closed corporation consisting of three stock-

141

holders, Silverman, Stern and the Spiegel estate. Giving effect to the agreement to purchase Stern's shares Silverman is alleged to be the owner of considerably more than half of all the stock of the corporation. He was president and managing officer and the secret negotiator of the Oriental Theatre transaction. He was the agent of Essaness and hence of its stockholders in carrying out these negotiations, and allegedly took advantage of this secret information to conclude an unconscionable bargain with, and to the injury of, a stockholder. It seems to us that such allegations make out such a special case as to bring it within the fiduciary rule.

This conclusion is not without precedent in this State. The case of *Wood v. MacLean Drug Co.*, 266 Ill. App. 5, presents a fact situation strikingly similar to the one under consideration. In the cited case plaintiff was the owner of 500 of 1,713 outstanding shares of stock in a closely-held family group. The sale of stock was concluded upon terms that the master and court found to be unconscionable. The facts established that at approximately the time that negotiations began for the purchase of plaintiff's stock further negotiations were being secretly conducted for the sale of the business by the president of the company for an asking price which would have greatly enhanced the value of plaintiff's stock. It further appeared that the president of the company had not long before the purchase of plaintiff's stock refused an offer for the sale of the company at a price which would have made plaintiff's stock worth at least twice as much as the amount which the company paid. Under the facts in that case the Appellate Court held that when the directors of the defendant company passed a resolution authorizing the purchase of plaintiff's stock they were acting as trustees for the company, for plaintiff and other stockholders, and therefore it was their duty

to disclose all the facts. In Fletcher's Cyclopedia Corporations, cited in that case, it is said (sec. 2270):

"Sometimes it is said that a director or other managing officer is a trustee in so far as the corporation and its stockholders are concerned, and sometimes it is said that he is a trustee only as to the corporation itself. However, the better rule seems to be that he is a trustee for an individual stockholder, as well as the corporation, at least in a limited sense."

This court later, in *Agatucci v. Corradi,* 327 Ill. App. 153, considering a similar state of facts, came to the same conclusion, and both cases refer with approval to the well-reasoned case of *Oliver v. Oliver,* 118 Ga. 362, 45 S. E. 232, an opinion by JUSTICE LAMAR, later MR. JUSTICE LAMAR of the United States Supreme Court, where the court said (pp. 367–368):

"No process of reasoning and no amount of argument can destroy the fact that the director is, in a most important and legitimate sense, trustee for the stockholder. * * * Not a strict trustee, since he does not hold title to the shares; not even a strict trustee who is practically prohibited from dealing with his *cestui que trust;* but a quasi trustee as to the shareholder's interest in the shares. * * * If, however, the fact within the knowledge of the director is of a character calculated to affect the selling price, and can, without detriment to the interest of the company, be imparted to the shareholder, the director, before he buys, is bound to make a full disclosure. In a certain sense the information is a quasi asset of the company, and the shareholder is as much entitled to the advantage of that sort of an asset as to any other regularly entered on the list of the company's holdings."

Defendants rely upon the Illinois cases of *Hooker v. Midland Steel Co.,* 215 Ill. 444, and *Bawden v. Taylor,* 254 Ill. 464. In the former case, which was distin-

143

guished by MR. JUSTICE O'CONNOR in *Wood v. MacLean Drug Co.,* plaintiff's stock was not bought by the corporation but by the president for his own account. That this distinction is important is apparent because the court took pains to point out that the directors occupy the position of trustees for the stockholders as a body and cannot have or acquire any personal or pecuniary interest in conflict with their duty as such trustees. That is to say, when they act on behalf of the corporation, they occupy the position of trustee to each individual stockholder. Whether a different legal situation exists where a director deals with a stockholder in his individual capacity is not the question before the court here. In *Bawden v. Taylor,* the purchase of the plaintiff's stock was made by the president of the corporation for his own account and not by or for the account of the corporation. Also in that case plaintiff had been informed by the president of the substance of the pending sale. *Marnik v. Northwestern Packing Co.,* 335 Ill. App. 568, involved a purchase of one stockholder's stock by another stockholder and not the corporation. Furthermore the fact situation is entirely different than that with which we are here dealing. The facts in the other cases cited by defendants show so little similarity as to be of no persuasive value in the instant case.

It is our conclusion that the allegations setting forth a breach of a fiduciary relationship were germane and that it was error to strike such allegations from the complaint. Moreover the agreement dated July 1, 1940 prohibited the disposition of any stockholder's shares without the written consent of all the Essaness stockholders and created in Silverman and the corporate defendant an obligation to deal with the other stockholders in a fair, frank and open manner. *Ditis v. Ahlvin Construction Co.,* 408 Ill. 416. We think it

error for the trial court to have stricken this agreement from the complaint.

Defendants argue further that the executors of the Spiegel estate had no confidence or trust in Silverman and made their own investigation as to the value of the Essaness stock. This contention involves matters of fact not properly before us on this hearing, which arises on the pleadings.

Finally, defendants argue that the proceeding in the probate court is a bar to the present action. We think this contention without merit. Neither of the present defendants was a party to the proceeding in the probate court, the only purpose of which was to determine whether or not the purchase of the stock was to the best interests of the Spiegel estate. The question as to the fiduciary relationship and the question of fraud were not before the probate court in that proceeding, and even though they had been, the probate court would have had no jurisdiction to enter any judgment against defendants.

Accordingly, the order of May 8, 1951 is reversed and the cause remanded with directions to overrule defendants' motion to strike, and to rule upon defendants to answer the complaint as filed on February 9, 1951.

*Reversed and remanded with directions.*

ROBSON, P. J. and SCHWARTZ, J., concur.